The next case today, number 231976, United States v. Alexis de Negron-Cruz. Counsel for appellant, please introduce yourself on the record to begin. Good morning, I'm Kevin Lerman, I represent the appellant's office in New York City. There's several questions at issue in this appeal, I'd like to start with what I think is the most important one, and that's whether Special Condition 31 should be stricken for any of the three reasons that we argued in the court. I think I'd like to start with just to stress that the touchstone for reviewing a condition that limits access to the internet is meaningful access. The easiest, I think the simplest way to address this condition is under the improper delegation aspect of the claim, the three aspects of the claim, equal protection. Let me ask you, if we were to say there's an improper delegation, then who's going to monitor it? If there's an improper delegation, then... Then there would be no monitoring, the information offices can't monitor it. No, the aspect here, so what's interesting about this condition is when Mr. Negron was released initially, the condition didn't have the last sentence that requires contribution according to his ability to pay, and that's the aspect that's problematic. So the implementation here where probation is taking that sentence and interpreting it as a way that basically probation, what we see in February of 2022 when Mr. Negron's state consents to monitoring, but probation tells him, well, if you can't pay, we're just, we're not going to monitor your internet. And then we see things change in late September around the time when Mr. Negron is trying to reestablish a visitation with his daughter and probation meets with him, meets with a state social worker, and tells the social worker he's out of compliance because his phone's not getting monitored, meets with him and says, by the way, unless you can pay, you have to turn in your phone. Counsel, let me, so it sounds to me like you're not challenging the terms of condition 31 itself. I mean, well, perhaps you are on improper delegation, but it seems to me that the court says you'll have to pay for the monitoring depending upon your ability to pay. Now, on its face, that seems like a fair thing to do. What's wrong with that? Just in terms, say in terms of your equal protection argument, what's wrong with that? Saying very explicitly, you're only going to have to pay if you have the ability to do it. What's wrong with that in terms of basic fairness? Well, it turns out, it turns out, Judge, that without a more specific progressive scale of when someone will have to pay, we see a pretty similar delegation problem as the First Circuit saw in the Merrick case in 1999. And so in that case, the court couldn't delegate a fine schedule to probation officers. And so we see here essentially that that fine schedule is just left completely out in the open. Why isn't the way in which the ability to pay is determined, why isn't, to use the language of some of our cases, why isn't that an administrative detail? Important to be sure, but why isn't that an administrative detail? I mean, how can the court work out all of those details as part of the judgment that it would enter? Well, I think there's two aspects. I think that alone is because probation is given so much discretion and there's no scale to work with, then probation is essentially in the position that we see in the Fifth Circuit case we cite, where probation has so much discretion that they're able to completely deny access to the Internet. But the other aspect is the more problematic one, and that's where probation is deciding whether or not to have the monitoring be applied at all. So we see from February 2022 until about March of 2023, we see probation just saying, we're not going to monitor any phones. We're going to let you have a phone for seven months, and then if you can't start paying for it, then, and we see them for six months telling him, your only alternative is just to get a phone that doesn't have Internet. So I think that's the more problematic delegation problem. Counsel, how is that – I'm just trying to understand how that harms your client because the fact that probation gave him time to get a job and have a paycheck so that he could pay and didn't enforce it for six or seven months, that benefited him, didn't it? So how is that harmful to your client in your view? Well, let's compare him side-by-side somebody who left prison in 2022 that had the ability to pay. So they would set up a smartphone, they would have monitoring, and there would have been no issue in September. So to have somebody – and this was made in the record – to have somebody during the pandemic, and things were a lot more difficult in Puerto Rico than I believe it was in the Northeast. And you have someone all of a sudden working sporadically and then told, look, if you can't pay, just turn over your phone to me. So this arbitrary enforcement, standard enforcement, ultimately harmed him greatly, and it harmed the relationship between him and the probation officer, which we see. Did your client ever just say very definitively that he could not pay and ask for some sort of change? I thought part of the issue was that at least probation, in probation's view, they were asking for his financial information. He wasn't providing it in an expeditious manner, and so there just wasn't the back and forth that needed to happen. Did he ever actually just say, look, here's all my pay stubs, I can't pay, so can you continue to relax the requirement? Did that happen? Do we know what probation would have done if he had said definitively, here's my pay stubs and I can't pay? Well, it's undisputed in the record what happened. We have – and this is according to – and granted, the fact witness Mojica's statements are unsworn, there's difficulty in their translations, but we see on September 28th, that's at Appendix 82, that he reports he can't comply with monitoring. He even removes his data plan from his phone, and he tells probation this on September 29th. That's at Appendix 83. And then probation insists that he still turn over his phone to them on October 3rd. And so there's no dispute at that time about whether they have enough information, and they obviously had enough information in February when he was released. But then we see him providing all the information that's requested in November. He appears and presents that on November 21st, provides more financial information on January 19th. The – if I may finish the point. Then we also see a lengthy exchange and cross-examination at Appendix 162 to 164, where Mojica makes clear that if he couldn't pay, then he had to get a phone without Internet. The magistrate finds no probable cause on the financial disclosure condition. The government abandoned it. There's no violation of Special Condition 20. And so upon request, he must provide information. And so we see exactly what would have happened, and there's enough information to find this condition. Counsel, what are you asking us to do? Are you asking us to undo any revocation findings based upon a violation of Condition 31? Or are you asking us going forward to insist that there be some clarification of how Condition 31 should be applied or implemented? It's not clear to me what you're asking us to do with respect to your focus on Condition 31. Well, going forward, Your Honor, I think the case law and the constitutional requirements require that the condition as written be stricken and guidance be given to the court in probation going forward. I didn't talk at all about the second and third claims, and those are about the violation of the Newfound Detached Arbiter Guarantee in revocation. Under the second claim, the remedy would be striking the revocation entirely remanded. And because there was such a quantity of information submitted to the court ex parte, that formed the basis of the court's findings. I'm sorry. So in terms of undoing revocation findings, you're relying upon what you would see as the misuse of the probation officer. Is that correct? In so many words, I think the probation officer is playing a part in the administration. In terms of your focus on Condition 31, your concern there is prospective. Do you think there's a need that you put to strike that condition and provide some clarification and some detail that probation could then follow? Is that what you're asking us to do? That's correct, Your Honor, and especially to provide guidance to ensure meaningful access to the Internet and ensure that the condition is narrowly tailored both in scope and in time. This is kind of going back to the original question. You would want the judge then to give guidance. You want us to tell what the probation officers have to do exactly. Each case is so different. I wouldn't say this in each and every case, but courts scrutinize unusual and extreme conditions. And so to have a 25-year term of supervised release and to have a payment to a private company that is going to cost tens of thousands of dollars for anyone under supervised release and whenever it's activated and deactivated by probation, it can cause extreme hardship. I think that's justified to take that closer look. You were asking us to implement a sliding scale, right? Wasn't that your specific request? I was asking the district court to implement a sliding scale. Sliding scale was the shorthand. That would just be a progressive pre-schedule. He's obviously indigent. He was afforded appointment of counsel. He was released to a homeless shelter. And so, yes, that's what it is. Thank you. Let's hear from the government now. Robert? May it please the court, Corey Roberts on behalf of the United States. I'd like to pick up with the discussion of the payment condition and, in particular, the idea that there was an improper delegation here with regards to the ability to pay. So, first, I think it's a good point to note that it's just not practical for the district court to be able to, in every case, list out every possible condition that might arise or every circumstance that might arise. And that's why probation officers need the flexibility to be able to administer administrative details, like, for example, the way that a defendant might attend drug treatment or hear how the monitoring is going to be carried out. With respect to the Merritt case that defense counsel cited there, the issue was that there was actually statutory language that said that a fine schedule would be determined by the court. And so that was why the First Circuit there decided that it was improper for the probation officer to be determining a payment schedule on that fine, and we don't have that here. So it's not the same delegation issue for the probation officer to be determining ability to pay. The next point that I would note is that the proper mechanism for the defendant to use if he feels that the conditions are being enforced in an unfair manner is to go to the district court under 3583E2 and ask for a modification. So here he could have come forward with the evidence of his inability to pay and told the district court judge, I need you to modify this condition so that probation is required to pay for the monitoring because I am not able to pay for it. And he didn't do that. He instead just chose to continue to violate his condition. Would that be a waiver? I'm not sure if that would be a waiver. It's more so that— An estoppel, maybe? Yeah, I think that might be a better language to put on it. You just said, because it seems to me like looking at the transcript, the supervisor seems to want to be monitored in the manner he wants to be monitored. I know he makes a statement about a chief probation officer and the probation officer says I'd rather be at MDC than be monitored by these folks. And let me say, my past experience with over 15 years as a district judge, there are many times in different cases, not the same scenario, when defense counsel said you can't comply with a condition, can you modify it one way or another? Prosecutors will also do it. It goes back and forth. In probation, usually things get resolved. Sometimes it's an agreement. That wasn't done here. Exactly, and I think another point to note there in terms of the defendant wanting to be monitored in his—how he wanted and nothing else, is he also was required to provide his password whenever he signed up for a site that allowed chat communications, and he refused to provide his password. So even when probation was cutting him some slack and enforcing the condition in a more modified way, he still wasn't complying with that modified version of it because he would provide his usernames but refused to provide his passwords. So it wasn't that he was complying even to the full extent of what probation was asking of him, even without the monitoring systems installed. And I think the other point that I'd like to make is the defendant's critique about— I think it's a good question to ask in terms of what the harm to the defendant was, and on that note, I think that the critique that the probation office was— there was improper delegation because they were cutting the defendants some slack here, that argument could be made for any condition where probation doesn't enforce it to the absolute fullest extent. So it's not that there was something inherently problematic about Condition 31. It's just a system of—a function of the probation system that any time the probation officer tries to work with a defendant and they're not enforcing the condition maybe to the fullest extent as written, that same critique would apply and that doesn't make it an improper delegation. So quite a few of these violations here, I guess you could call them technical in nature, failing to truthfully respond to questions were asked, that kind of thing. Were there any violations based upon Condition 31 itself? Yes. So there were a total of six conditions I believe that were found to have been violated, and Condition 31 was one of those conditions for the fact that the defendant refused to provide his passwords and then repeatedly had unauthorized devices, including, for example, the iPad that he had received from work and then was not truthful about the fact that he still possessed it once he no longer had that job. So if we decided that there were things problematic about Condition 31, would we have to undo those violations that were based on Condition 31? It seems like we would have to. I'm not sure that you would because he doesn't dispute that he violated its conditions. So, for example, Condition 4 about answering truthfully the questions asked by the probation officer, he doesn't dispute that he violated those other conditions that were unrelated to the Internet monitoring. He doesn't object to his time served sentence, and he doesn't object to the term of supervised release that was imposed. So I think any findings that were regards to Condition 31 would be harmless in terms of the actual sentence that was imposed on the defendant, and the revocation could be upheld on those other violations. So I think that the narrow issue that's really before the court is the more prospective issue about if the court needs to intervene with respect to— When you talk about prospective, shouldn't it not be us, but rather the district? Because there is no impediment right now. If counsel filed a motion to please modify this condition, that condition, that's got to be taken care of one way or another. So it's not like every door is closed for him for a second or a second more. He's got an opportunity to prospectively challenge anything he understands needs to be challenged. Exactly, and I think the government would agree with that, that the proper remedy here, if he has an issue with the way Condition 31 is going to be enforced going forward, would be to go to the district court and ask for a modification. And let me say this, in a practical perspective, based on experience, what usually will happen is the attorney will first reach out to probation. If they don't agree to modify it, the motion will be filed. Many times the magistrate judge will intervene initially, and it may resolve. And if it's not resolved there, it's still—you get the higher level, you go to district. So there's plenty of opportunities to address this issue, correct? Exactly. And the last point I would just touch on briefly is the point that defense counsel raised at the end about the ex parte communications. I think the examples that the defense counsel points to on pages 114 and 115 of the appendix for alleged improper ex parte communications are related to the district court discussing the proposed sentence and the proposed supervised release conditions with the probation officer. And those fall well within the category of advice and analysis that the permissible discussion for a district court judge to have with the probation officer when discussing what to do in the context of a supervised release proceeding. So I don't think that there was any improper—evidence of any improper ex parte communications here with respect to that discussion. Counsel, I thought, though, that according to the briefing and the record, there were several facts that the district court referred to that it just wasn't possible for the court to have been aware of at the time because they were based on the second hearing and the transcript for the second hearing wasn't available until after the court gave its ruling on the revocation. So, I mean, how could—this is not about advice and, you know, discussion of the sentence. It's actual facts that the district court just couldn't have been aware of and couldn't have considered unless there was some kind of ex parte communication and that, you know, suggested the defendant didn't have a chance to potentially rebut those facts or respond to them. So how do you respond to that? Sure. So that's the second bucket of alleged ex parte communications. And so I think here it's important to note that the source of those facts was also included in the notices of violation at 91 and 93 of the appendix that were filed on the district court docket. So that was about the fact that the defendant had started working for Uber. And so I think this court's decision in Reyes-Correa is helpful on that point in terms of how we look at if something is an ex parte communication when it's filed on the docket. And so the defendant is aware that the district court has received those facts and knows that it might be taken into account in the sentencing determination. It's not simply that there was no possibility that the defendant could have known that those facts were before the district court because they were filed on the docket in the notice of violation. I thought it wasn't just about the—you're right that one of the facts was about when he started working for the Uber Eats delivery service, I guess. But the other fact, based on my notes, and you can tell me if I'm wrong, was that the district court found a violation of Special Condition 32 as a result of the defendant's conduct on March 27th, which was, again, after— at a time that the district court just couldn't have been aware of that fact unless he spoke to somebody before he issued his ruling. And that had to do with something you discussed earlier, which is the allegation that the defendant had another device that probation thought was unauthorized, and that was another basis for the revocation. So, again, that didn't seem to be in the record. It wasn't something that the defendant could respond to, and then all of a sudden it's one of the bases for the revocation. So why isn't that problematic? So I think, if anything, that would be harmless here because, as I mentioned previously, there was ample evidence to support several different violations. And the time served sentence, the reimposition of the supervised release, could stand on those as well. I'd also note that the allegations that were included in the February 10th Notice of Violations and the March 6th hearing would separately support a finding of a violation of Condition 32. So that's at 84 of the appendix in the Notice of Violations filed by the probation officer about the fact that the defendant previously had unauthorized devices. And then that also was discussed at, I believe, 149 to 152 of the first hearing. So it might have been a little bit imprecise in terms of how the district court found that finding of Condition 32, but that finding would separately be supported by the facts that were before the court on the first hearing as well. Thank you, counsel. Thank you. Okay, Mr. Lerman, two minutes to go. Please identify yourself. Kevin Lerman, back on the record. I'd like to make four points. The first one is the government tries to distinguish the delegation here from the case where there was a statute addressing the fine schedule. I think the problem is worse here because the government relies on no particular authority to state that Mr. Negron should be required to pay a private corporation a really unspecified and changing quantity of money. Second, I'd like to address the claim that the proper mechanism was for Mr. Negron, a monolingual Spanish speaker, who was eventually, as of October 3rd, left without Internet access, that the proper mechanism was for him to just file a motion to modify. I think it's timely that we're here on the anniversary of the Jones Act because the district court here very unfortunately interprets that act as requiring them to mark any Spanish language correspondence returned to sender. So the court was closed for Mr. Negron at the time that he was deprived of the phone. Third, the government alleges that there's not an objection to the revocation determination. I'd point the court to Appendix 139 where defense counsel argues I need to preserve an objection to this court's conclusion regarding Mr. Negron's violation of his term of supervised release, cites back to the revocation memorandum, cites back to the argument that the court shouldn't revoke based on the highly subjective conditions where the government focused solely on the evidence that had been produced at the March 6th hearing. Finally, the ex parte communication. Specifically, the government had abandoned any allegation outside the testimony from March 6th. This is worse than just relying on ex parte. It's the court accepting the U.S. probation officer as a member of the same adjudicated unit and simply saying all import your findings which were submitted to the court, again, uncertified. This court's expectation since the Coyasso case in 2011 that findings should be submitted under penalty of perjury. That was violated, and that encouraged the court to adopt the probation officer's proposed conditions in full without consideration of Mr. Negron's ability. Counsel, I'll just ask you one more question. Given that the sentence for the second revocation has been fully served, how do you think that should impact our analysis of the issues? I understand your perspective arguments about Special Condition 31, but what about all the other arguments you've made? I mean, the sentence has been served. It still needs to be vacated. Each one of these revocations has extended Mr. Negron's term. There was another revocation for a similar set of allegations that was just finished in December of last year. And so that one will also – that one, we filed a notice of appeal and we put the sentence there. And so he was harmed. This court has held that. The possibility of a shorter term of supervised release on remand renders a lack of legitimacy. Thank you, counsel. That concludes arguments in this case.